1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SCOTT JOHNSON,                               No.  2:16-cv-0126 KJM AC

12                   Plaintiff,

13          v.                                    FINDINGS AND RECOMMENDATIONS

14   HAKMAT LABABEDY; J & K ATWAL,
     INC., a California Corporation; et al.,
15
                     Defendants.
16

17          This is an Americans with Disabilities Act ("ADA") and Unruh Act case alleging that

18   defendants failed to provide accessible parking spaces, and accessible counter space.  Plaintiff

19   moves for the entry of a default judgment against defendants.  This proceeding was accordingly

20   referred to the undersigned by Local Rule 302(c)(19) (motions for entry of default judgment

21   under Fed. R. Civ. P. 55(b)(2)).

22          For the reasons set forth below, the undersigned will recommend that plaintiff be granted

23   a default judgment on his claim that defendants failed to provide counters of the correct height,

24   and that the motion as to all other claims be denied.

                                    I.  THE COMPLAINT

26          Plaintiff Scott Johnson is disabled.  Complaint (ECF No. 1) ¶ 1.  Circle 7 is a place of

27   public accommodation.  Complaint ¶ 30.  Plaintiff visited Circle 7 eleven times from September

28   2011 through February 2015.  Id. ¶¶ 212-22.

                                              1

During those visits, plaintiff personally encountered several architectural barriers that denied him full and equal access to Circle 7.  First, there were no accessible parking spaces that complied with state or local laws or regulations for accessible parking spaces.  Second, there were no van-accessible parking spaces.  Third, there was no accessible counter space.  During those visits, plaintiff also personally encountered counter space that was cluttered with various objects.

Defendant Hakmat Lababedy was, at all relevant times, the "real property owner" of the "building/parcel located at or about 7601 Stockton Blvd."  Complaint ¶¶ 2-14.  Defendant J & K Atwal, Inc. ("Atwal"), was, at all relevant times, the "business owner" of "Circle 7, located at or about 7601 Stockton Blvd."  Complaint ¶¶ 14-25.

## II.  PROCEDURAL BACKGROUND

Plaintiff served the summons and complaint on Atwal on February 2, 2016.  ECF No. 4.  Plaintiff served the summons and complaint on Lababedy on February 16 and 17, 2016.  ECF No. 7.  The Clerk of the Court entered defaults against defendants Atwal and Lababedy on March 4, 2016 and March 28, 2016, respectively.  ECF Nos. 6, 9.  Plaintiff now moves for default judgment against both defendants on his claim under the ADA, 42 U.S.C. §§ 12182, 12183, and the Unruh Act, Cal. Civ. Code §§ 51(f), 52(a).

## III.  LEGAL STANDARDS

### A.  Motion for Default Judgment

It is within the sound discretion of the district court to grant or deny an application for default judgment.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  The complaint's well-pleaded factual allegations "are taken as admitted on a default judgment."  Benny v. Pipes, 799 F.2d 489, 495 (9th Cir. 1986).  Those well-pleaded factual allegations must be sufficient to establish plaintiff's entitlement to a judgment under the applicable law.  See Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388 (9th Cir. 1988) (reversing default judgment on Racketeer Influenced and Corrupt Organizations Act ("RICO") claim where "the complaint fails properly to allege a claim for violation" of RICO); Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992) ("claims which are legally insufficient, are not established by default").

1    The decision to grant or deny an application for default judgment lies within the district

2    court's sound discretion.  <u>Aldabe</u>, 616 F.2d at 1092.  In making this determination, the court may

3    consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of

4    plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in

5    the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

6    due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

7    Procedure favoring decisions on the merits.   <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir.

8    1986).

9        B.  <u>Title III of the ADA</u>

10   "Title III of the ADA prohibits discrimination in public accommodations . . . ."  <u>Kohler v.</u>

11   <u>Bed Bath & Beyond of California, LLC</u>, 780 F.3d 1260, 1263 (9th Cir. 2015).  The elements of a

12   Title III claim are: (1) plaintiff is disabled within the meaning of the ADA; (2) the defendant is a

13   private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff

14   was discriminated against by the defendant because of plaintiff's disability.  42 U.S.C.

15   § 12182(a); <u>Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.</u>, 603 F.3d 666, 670

16   (9th Cir. 2010).

17   Discrimination, in this context, includes "a failure to remove architectural barriers … in

18   existing facilities … where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).

19   Where plaintiff alleges that the discrimination arose from defendants' failure to make

20   modifications to existing policies, the complaint must additionally allege that defendants failed

21   "to make a requested reasonable modification that was . . . necessary to accommodate the

22   plaintiff's disability."  <u>Fortyune v. Am. Multi-Cinema, Inc.</u>, 364 F.3d 1075, 1082 (9th Cir. 2004).

23   Plaintiff alleges three types of discrimination in this case, resulting from defendants'

24   failure to provide adequate accessible parking spaces, and accessible counter space.  First,

25   defendants failed to make "reasonable modifications in policies, practices, or procedures" that

26   were necessary to accommodate individuals with disabilities, in violation of 42 U.S.C.

27   § 12182(b)(2)(A)(ii).  Second, defendants failed to remove architectural barriers where such

28   removal was readily achievable, in violation of 42 U.S.C. § 12182(b)(2)(A)(iv).  Third,

1  defendants failed to make alterations in a manner that would render the altered portion of the

2  facility readily accessible to individuals with disabilities, in violation of 42 U.S.C. § 12183(a)(2).

3          C.  The Unruh Act, Cal. Civ. Code §§ 51(f), 52(a)

4          Under California's Unruh Act, "[a] violation of the right of any individual under the

5  federal Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this

6  section."  Cal. Civ. Code § 51(f).  In addition, the Unruh Act independently prohibits

7  discrimination, if it is done in contravention of Section 51.  Cal. Civ. Code § 52(a).  Section 52(a)

8  provides for statutory damages of no less than $4,000 for each violation, and attorney's fees.  Id.

9                  IV.  ANALYSIS – EITEL FACTORS

10         A.  Prejudice to the Plaintiff

11         The first Eitel factor considers whether plaintiff would suffer prejudice if default is not

12  entered.  See PepsiCo, Inc. v. California Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal.

13  2002).  This factor is normally satisfied where, as here, defendant has been properly served with

14  the complaint, but has entirely failed to respond to it.[1]  If plaintiff's application for default

15  judgment were denied, the case would never get before the court on its merits, and plaintiff would

16  be denied a judicial determination on whether it is entitled to recourse on its claim.  See Philip

17  Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("prejudice"

18  exists where the plaintiff has no "recourse for recovery" other than default judgment).  Therefore,

19  plaintiff would be prejudiced if the Court were to deny its application for default judgment, and

20  accordingly this factor weighs in favor of default judgment.

21         B.  The Merits and Sufficiency of the Complaint

22         Given the close relationship between the merits of plaintiff's substantive claims and the

23  sufficiency of the complaint, these factors can be discussed jointly.  Effectively, factors two and

---

24  [1]  This factor is more fully in play where the defendant has appeared and litigated the case, but a
25  default judgment is sought based upon an untimely response to the complaint, as in Eitel itself, or
    where default judgment is sought as a sanction.  See Eitel, 782 F.2d at 1471-72 (reciting seven
26  factors to be considered after defendant late-filed an answer to the complaint); Adriana Intern.
    Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990) (reciting five factors for Rule 37 sanction
27  of striking answer and entering default, including the court's need to manage its docket), cert.
    denied, 498 U.S. 1109 (1991); Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990) ("[o]ur
    own court has fashioned a set of factors for the district court to apply in considering whether a
28  dismissal or default is appropriate as a Rule 37 sanction").

1   three amount to a requirement that the allegations in the complaint be sufficient to state a claim

2   that supports the relief sought.  See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978) (in

3   considering default judgment, "[t]he issue . . . is whether the allegations in the complaint are

4   sufficient to state a claim").

5                          1.  Title III of the ADA

6                              (a)  Plaintiff is disabled.

7          Plaintiff alleges that he is "disabled" as defined by the ADA, in that as he "is a level C-5

8   quadriplegic . . . [who] cannot walk and also has significant manual dexterity impairments, . . .

9   [and who] uses a wheelchair for mobility and has a specially equipped van."  Complaint ¶ 1; see

10  Molski v. M.J. Cable, Inc., 481 F.3d 724, 732 (9th Cir. 2007) ("[i] t is clear that Molski, who is

11  paraplegic, falls within that term").

12                             (b)  Public accommodation.

13         Plaintiff alleges that Circle 7 is a public accommodation, in that it "is a facility open to the

14  public," and is "a business establishment."  See 42 U.S.C. § 12181(7) (listing types of

15  establishments that are "public accommodations," including a "bakery, grocery store, clothing

16  store, hardware store, shopping center, or other sales or rental establishment");[2] 28 C.F.R.

17  § 36.104 (implementing regulation) (same); see also, Jankey v. Twentieth Century Fox Film

18  Corp., 212 F.3d 1159, 1161 (9th Cir. 2000) (Title III only applies if the establishment is open to

19  the public).

20         Plaintiff sufficiently alleges that defendants are private entities, by alleging that they are

21  business owners and joint venturers.  Complaint ¶¶ 14-26; see 42 U.S.C.A. § 12181 ("private

22  entity" is entity that is not a state or local government or agency).  This "joint" allegation also

23  sufficiently alleges that Atwal, the business owner, is liable for the Title III violations, along with

24  Lababedy, the landlord.

25

26  _____

27  [2]  See Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000) (noting
    that all the items on the list have one thing in common: "They are actual, physical places where
    goods or services are open to the public, and places where the public gets those goods or
28  services").

1       (c) Discrimination

2           (i) Inaccessible parking

3           As noted, discrimination under Title III "includes 'a failure to remove architectural

4  barriers … in existing facilities … where such removal is readily achievable.'"  Molski, 481 F.3d

5  at 730 (quoting § 12182(b)(2)(A)(iv)).  The implementing regulations establish that failure to

6  "creat[e] designated accessible parking spaces" is a failure to remove architectural barriers, where

7  doing so is "readily achievable."  28 C.F.R. § 36.304(b)(18).  Plaintiff argues that whether a

8  parking space is accessible is "determined by reference to the American[s] with Disabilities Act

9  Accessibility Guidelines ('ADAAG')."  ECF No. 13-1 at 9 (citing Chapman v. Pier 1 Imports

10  (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011) (en banc)).[3]  He further argues that the ADAAG

11  requires that there be at least one accessible parking space, and at least one van-accessible

12  parking space.

13          Plaintiff is correct, in regard to parking spaces, even though the ADAAG generally applies

14  to new construction (and alterations of existing structures).  In general, the cited ADAAG

15  provisions – 1991 Standards § 4.1.2(5), 2010 Standards §§ 208, 208.2.4 – apply to the design and

16  building of "new construction," which is not alleged to be involved here.  See Chapman, 631 F.3d

17  at 945 ("newly constructed facilities" must be "readily accessible," as defined by the ADAAG);

18  36 C.F.R. Part 36, App. C (section 4.1.2 of the 1991 Standards "addresses … parking … in *new*

19  *construction*") (emphasis added); 36 C.F.R. Part 1191, App. B § 101.1 (the 2010 Standards "are

20

21  [3] As required by 42 U.S.C. § 12186(b), the U.S. Attorney General has promulgated regulations to
carry out the provisions of Title III.  See 36 C.F.R. Part 36.  Those regulations "include standards
22  applicable to facilities" covered under 42 U.S.C. § 12182.  The AG's regulations are required to
be "consistent with the minimum guidelines and requirements issued by the Architectural and
23  Transportation Barriers Compliance Board [the 'Access Board']."  42 U.S.C. § 12186(c).  In turn,
the Access Board "is directed to establish 'minimum guidelines and requirements for the
24  standards issued'" under Title III of the ADA.  Miller v. California Speedway Corp., 536 F.3d
1020, 1024 (9th Cir. 2008) (quoting 29 U.S.C. § 792(b)(3)(B)).  The Access Board's guidelines
25  are the "ADA Standards for Accessible Design" ("ADAAG").  "The term '1991 Standards' refers
to the ADA Standards for Accessible Design, originally published on July 26, 1991, and
26  republished as Appendix D to 28 CFR part 36."  28 C.F.R. § Pt. 36, App. A.  "The term '2010
Standards' refers to the 2010 ADA Standards for Accessible Design, which consist of the 2004
27  ADAAG and the requirements contained in subpart D of 28 CFR part 36."  Id. (the "2004
ADAAG" refers to the guidelines published at 26 C.F.R. 1191, appx. B and D (2009)).

28

to be applied during the design, construction, additions to, and alteration of … facilities"), 101.2 ("this document," which includes the 2010 Standards, "does not address existing facilities unless altered at the discretion of a covered entity").

However, since the DOJ regulations specifically call for the creation of accessible parking "in existing facilities," 28 C.F.R. § 36.304(b)(18), it appears that the ADAAG standards do apply:

> The Department of Justice has authority over existing facilities that are subject to the requirement for removal of barriers under title III of the ADA.   Any determination that this document applies to existing facilities subject to the barrier removal requirement is solely within the discretion of the Department of Justice and is effective only to the extent required by regulations issued by the Department of Justice.

36 C.F.R. Part 1191, Appx. B § 101.2.

Under both the 1991 and 2010 ADAAG standards, any business that provides parking spaces must provide at least one accessible parking space conforming to the Guidelines' specifications.  28 C.F.R. pt. 36, App. D ("1991 Standards") § 4.1.2(5)(a); 36 C.F.R. pt. 1191, Appx. B & D (collectively, "2010 Standards") § 208.2.[4]  Under the 1991 standards, one in every eight accessible spaces, but not less than one, shall be designated "van accessible."  1991 Standards § 4.1.2(5)(b).  Under the 2010 standards, at least one in every six accessible parking spaces shall be "van parking spaces."  2010 Standards § 208.2.4.

Plaintiff alleges that Circle 7 contains parking spaces, but none of them are accessible. However, rather than alleging facts showing that the parking spaces do not comply with the ADAAG, plaintiff alleges facts showing that the parking spaces do not comply with the California Building Code ("CBC"), specifically, Sections "1129B.4" and "1129B.3."  See ECF No. 13-1 at 9-10.

However, there are no sections "1129B.4" or "1129B.3" in the current California Building Code.[5]  Moreover, even if those provisions still existed, or otherwise applied, plaintiff offers no

---

[4]  Appx. B (of 36 C.F.R. pt. 1191) ("Scoping") includes "2010 Standards" §§ 101.1 to 243.1. Appx. D ("Technical") includes "2010 Stand'ards" §§ 301.1 to 1019.1.
[5]  See http://www.bsc.ca.gov/Codes.aspx (last visited by the undersigned on August 1, 2016).  It appears that the sections plaintiff cites have been out of date since January 1, 2014.

1    convincing explanation for why failure to comply with them – rather than failure to comply with

2    the ADAAG itself – amounts to a violation of the ADA.

3        Plaintiff seems to argue that an "Advisory" note to 2010 Standards § 502.3.3 requires the

4    court to use the CBC in determining whether defendants have complied with the ADA.[6]  That is

5    not correct.  Advisory notes in the 2010 Standards are *advisory*, they do not themselves establish

6    any enforceable requirements.  28 C.F.R. part 36, subpart D § 36.406(b) ("advisory notes …

7    contained in the 1991 Standards and 2010 Standards explain or illustrate the requirements of the

8    rule; they do not establish enforceable requirements"); see also, Eiden v. Home Depot USA, Inc.,

9    2006 WL 1490418 at *8, 2006 U.S. Dist. LEXIS 38423 at *26 (E.D. Cal. 2006) (Karlton, J.)

10   (rejecting use of the California Building Code because "compliance with the ADAAG, and not

11   another standard, constitutes compliance with the ADA requirements for new construction").

12   Therefore, persons trying to comply with the ADAAG "may" look to the CBC for guidance on

13   how to ensure that access aisles are properly marked.  However, the CBC requirements are not

14   mandatory, and failure to comply with them does not amount to a violation of the ADA.

15   Accordingly, the court examines the complaint to determine whether it alleges a violation of the

16   ADAAG elsewhere.

17       First, plaintiff alleges that there were no accessible parking spaces.  However, the only

18   *facts* alleged in support of this conclusion are that "there was no 'NO PARKING' lettering on the

19   parking spaces designated for use by persons with disabilities,"  "there was a faded wheelchair

20   logo in the designated handicap parking space,"  "there was no tow-away warning signage," and

21   "there was no 'Minimum Fine $250' signage."  Complaint ¶¶ 235-38.  None of these items shows

22   that defendants have not complied with the ADAAG, or that they are in violation of the ADA.[7]

23       To the contrary, accessible parking spaces are only required to comply with the ADAAG

24   _____

25   [6]  The particular advisory note plaintiff cites relates to the proper marking of access aisles.  It
     states that "[t]he method and color of marking are not specified by these requirements *but may be*

26   *addressed by State or local laws or regulations*."  Id. ("Advisory 502.3.3 Marking") (emphasis
     added).

27   [7]  It does appear that these items may be required by the California Building Code § 11B-502
     ("Parking Spaces").  However, as noted, a violation of this state regulation does not in itself

28   amount to non-compliance with the ADAAG or a violation of the ADA.

1  standards.  The 1991 Standards state that "[i]f parking spaces are provided for self-parking by

2  employees or visitors, or both, then accessible spaces complying with 4.6 shall be provided in

3  each such parking area").  See 1991 Standards § 4.1.2(5)(a).  Section 4.6, in turn, does not require

4  any of the items plaintiff complains are missing.  See id. § 4.6.  The 2010 Standards state that if

5  there are parking spaces, at least one must be provided that complies with Section 502.  2010

6  Standards § 208.2.  Section 502, in turn, does not require any of the items plaintiff complains are

7  missing.  See id. § 502.  Plaintiff should not be granted a default judgment on the claim that there

8  are no accessible parking spaces.

9       Second, plaintiff alleges that there was not a single designated van accessible parking

10  space.  Complaint ¶ 232.  However, the only *fact* that plaintiff alleged in support of this

11  conclusion is that "there was no diagonally-striped marking and blue border around the

12  designated van parking space where an access aisle is supposed to exist."  Complaint ¶ 234.[8]

13  Plaintiff has identified nothing in the ADAAG that requires such markings or borders.  To the

14  contrary, the van accessibility guidelines set forth in the ADAAG do not require the allegedly

15  missing diagonal marking and blue border.  See 1991 Standards § 4.6.4 (requiring signage only);

16  2010 Standards § 502.3 (requiring that "[a]ccess aisles … be marked so as to discourage parking

17  in them," but not specifying diagonal markings or a blue border to achieve this).  Plaintiff should

18  not be granted a default judgment on the claim that there are no van accessible parking spaces.

19                    (ii)   Inaccessible counter space - height

20       The DOJ regulations, specifically 28 C.F.R. § 36.304(b)(3), call for the elimination of

21  excessively high transaction counters, inasmuch as the regulation identifies

22  "[r]epositioning shelves," among the "[e]xamples of steps to remove barriers."  See Johnson v.

23  Wayside Property, Inc., 41 F. Supp. 3d 973, 977 (E.D. Cal. 2014) (Shubb, J.) ("[t]he Department

24  of Justice has promulgated a regulation in which it lists removal of all three barriers – inadequate

25  _____

26  [8]  Plaintiff specifically points out that a van-accessible parking space must have "an eight foot
access aisle," as required by the ADAAG.  See 1991 Standards § 4.1.2(5)(b) (at least one parking

27  space "shall be served by an access aisle 96 in (2440 mm) wide minimum and shall be designated
'van accessible'").  However, plaintiff fails to allege that such an aisle was missing from this

28  facility.

1   handicapped parking, unlawful door hardware, and an excessively high transaction counter – as

2   'examples of steps to remove barriers'") (citing 28 C.F.R. §§ 36.304(b)(3), (11), (18)).

3   Therefore, the undersigned looks to the ADAAG to determine whether plaintiff has alleged that

4   the counters are not in compliance, and therefore violate the ADA.

5           According to the ADAAG:

6                In department stores and miscellaneous retail stores where counters
                 have cash registers and are provided for sales or distribution of
7                goods or services to the public, at least one of each type shall have a
                 portion of the counter which is at least 36 in (915mm) in length
8                with a maximum height of 36 in (915 mm) above the finish floor.

9   1991 Standards § 7.2(1); 2010 Standards § 904.4.  Plaintiff alleges that defendants' facility

10  violates these standards.  Specifically, the complaint alleges that defendants' "cashier counter"

11  was more than 36 inches in height, and thus in violation of ADAAG standards.  The complaint

12  also alleges that this barrier is "easily removed," and that making it accessible is "readily

13  achievable."  Complaint ¶ 226.  Plaintiff is therefore entitled to a default judgment under Title III

14  for the inaccessible cashier counter based upon its height.

15                          (iii)   Inaccessible counter space - clutter

16          The complaint alleges that the counter space was regularly cluttered with coolers and

17  other merchandise exceeding 34 inches in height and 24 inches in depth, thus limiting the clear

18  width of the counter to less than 36 inches.  Plaintiff does not distinguish between this clutter and

19  "architectural barriers," but he provides no authority for the proposition that clutter is an

20  architectural barrier.  It does not appear to be.  See Chapman v. Pier 1 Imports (U.S.) Inc., 779

21  F.3d 1001, 1009 (9th Cir. 2015) ("items on the otherwise properly accessible sales counter

22  depicted in Chapman's photographs were not a barrier to the use of the counter by persons with

23  disabilities").

24          Rather, defendants' decision to leave a cooler and other stuff on the counter is a "policy,

25  practice or procedure" that interferes with plaintiff's ability to access the counter.  Indeed, the

26  complaint states that "Defendants had a practice of placing coolers and other merchandise in front

27  of the cashier counter."  Complaint ¶¶ 167, 171, 175, 179, 183, 187, 191, 195, 199, 203, 207.  As

28  such, in order to state a claim regarding this clutter, plaintiff must allege that he requested a

1   reasonable modification of the policy and that plaintiff failed make the modification.  See

2   Fortyune, 364 F.3d at 1082 (plaintiff must allege that defendants failed "to make a *requested*

3   *reasonable modification that was* . . . *necessary to accommodate the plaintiff's disability*")

4   (emphasis added).  There is no such allegation in the complaint.[9]  Plaintiff is not entitled to

5   default judgment on the "clutter" claim.

6                                            d.  Alterations

7            The complaint alleges a violation of 42 U.S.C. § 12183(a)(2).  However, that provision

8   only applies to a defendant who is making an alteration to an existing structure.  See Lemmons v.

9   Ace Hardware Corp., 2014 WL 3107842 at *8, 2014 U.S. Dist. LEXIS 91347 at *24 (N.D.

10  Cal. 2014) ("[t]he ADA requires that any alterations made after January 26, 1992, to an existing

11  building be made 'readily accessible to and useable by' individuals with disabilities 'to the

12  maximum extent feasible[.]'  42 U.S.C. § 12183(a)(2)").  The complaint does not allege that these

13  defendants were making any alteration to any existing structure.  Accordingly, this provision is

14  not involved in this case, and plaintiff is not entitled to a default judgment.

15                          2.  California's Unruh Civil Rights Act

16           Because plaintiff has shown that defendants are in violation of Title III of the ADA,

17  specifically, the failure to provide accessible counters of the proper height, he has also shown that

18  defendants are in violation of the Unruh Civil Rights Act.  Lentini v. California Center for the

19  Arts, Escondido, 370 F.3d 837, 847 (9th Cir. 2004) ("a violation of the ADA is, per se, a violation

20  of the Unruh Act").  Plaintiff is therefore entitled to a default judgment on this claim.

21           C.  Sum of Money Involved

22           Under this Eitel factor, "the court must consider the amount of money at stake in relation

23  to the seriousness of Defendant's conduct."  PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp.

24  2d 1172, 1176-77 (C.D. Cal. 2002).  Plaintiffs here seek a grand total of $4,000 plus attorney's

25  fees.  The complaint offers no information about the defendants' financial condition, so the court

26  ─────────────────────
    [9]  See also, See Chapman v. Pier 1 Imports (U.S.) Inc., 779 F.3d 1001, 1010 (9th Cir. 2015)
27  (holding, on summary judgment, that clutter is a violation only if defendant fails to promptly
    remove it, so the obstruction does not persist beyond a reasonable period of time") (internal
28  quotation marks omitted).

                                            11

1   cannot tell if this is a significant amount of money to defendants.  However, there is no evidence

2   that defendants took any action after being served with the summons and complaint in order to

3   avoid a judgment of this size.  This court concludes that this factor weighs in favor of a default

4   judgment.

5         D.  Disputed Material Facts

6         This Eitel factor "considers the possibility of dispute as to any material facts in the case.

7   Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those

8   relating to damages."  Pepsico, 238 F. Supp. 2d at 1177.  Here, there appear to be no material

9   facts in dispute.  This factor weighs in favor of a default judgment.

10         E.  Excusable Neglect

11         This is another factor that is only fully in play if the requested default is because of an

12   untimely pleading or is requested as a sanction.  Here, defendants have made no appearance at all,

13   so the court cannot tell if defendants have failed to appear because of excusable neglect.  This

14   factor does not weigh in favor of, or against, default judgment.

15         F.  Policy Favoring Merits Determinations

16         This factor always weighs against default judgment, since a default judgment would

17   preclude a judgment on the merits.  However, it is not sufficient to avoid default judgment, or no

18   default judgments could ever be granted, counter to the plain language of Fed. R. Civ. P. 55(b).

19   This factor seems to be fully in play when defendants have at least responded to the lawsuit, and

20   the question is whether a default judgment should be entered because of untimely pleading, or as

21   a sanction.  Here, where plaintiffs have stated a claim against both defendants, and defendants

22   have failed to respond, this factor does not add any additional weigh in favor of, or against,

23   default judgment.

24                     V.  ATTORNEY'S FEES & COSTS

25         Plaintiff requests attorney's fees under Title III of the ADA and the Unruh Civil Rights

26   Act.  Attorney's fee awards are calculated using the "lodestar" method whereby the hours

27   reasonably spent in the litigation are multiplied by a reasonable hourly rate.  Ferland v. Conrad

28   Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (per curiam).  The hourly rate is generally

1    calculated "according to the prevailing market rates in the relevant legal community." <u>Blum v.</u>

2    <u>Stenson</u>, 465 U.S. 886, 895 (1984).  It is also the general rule that the court will use the rates of

3    attorneys practicing in the forum district.  <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1405 (9th

4    Cir. 1993).

5         Plaintiff requests attorney fees at an hourly rate of $425 for 9.2 hours of work, plus $440

6    in filing fees and service costs, totaling $4,350.  ECF No. 13-4 ¶ 5.  Plaintiff claims that this is a

7    fair rate for attorneys with similar experience in the area of disability law, but does not address

8    the prevailing market rates in the forum district.  <u>Id.</u>  Instead, plaintiff discloses the rates awarded

9    in the Southern and Central Districts of California.  The undersigned finds that the prevailing rate

10   is $250 per hour for the Sacramento Division of the Eastern District of California for similar

11   services by lawyers of reasonably comparable skill, experience, and reputation.  <u>See</u> <u>Loskot v. D</u>

12   <u>& K Spirits, LLC</u>, 2011 WL 567364 at *5, 2011 U.S. Dist. LEXIS 15664 at *14 (E.D. Cal. 2011)

13   (Drozd, M.J.) (citing Eastern District ADA cases resolved on default judgment where $250 was

14   determined to be the reasonable rate).  Accordingly, the undersigned will recommend that

15   plaintiff be awarded $2,740 in attorney's fees and costs, based on an hourly rate of $250 for 9.2

16   hours, along with $440 in filing fees and costs.

17                              VI.  CONCLUSION

18        All the <u>Eitel</u> factors that are fully in play here – prejudice to plaintiff, the merits and

19   sufficiency of the complaint, the sum of money involved, the absence of material factual disputes

20   – weigh in favor of the default judgment on the one claim where plaintiff has stated a claim,

21   namely the inaccessible counter claim.  The other factors – excusable neglect, policy favoring

22   merits determination – are not substantially in play, and do not weigh in favor of, or against

23   default judgment.

24        Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's motion for default

25   judgment be granted in part and denied in part, as follows:

26        1.   Granted on the claim that defendants failed to provide counter space of the proper

27             height, as required by the ADAAG, in violation of the ADA, 42 U.S.C.

28             § 12182(b)(2)(A)(iv).

2. Granted on the claim that defendants violated the Unruh Act, based upon the above ADA violation.

3. Denied on all other grounds.

4. Defendants should be ordered, as authorized 42 U.S.C. § 12188(b)(2), to provide counter space at Circle 7 of the height required by the ADAAG,.

5. Plaintiff should be granted a total of $4,000 as statutory damages, as authorized by the Unruh Act, Cal. Civ. Code § 52(a), jointly and severally against the defendants.

6. Plaintiff should be awarded attorney's fees and costs, as authorized by 42 U.S.C. § 12205 and Cal. Civ. Code § 52(a), jointly and severally against the defendants, of $2,300 in attorneys' fees plus $440 in costs, for a total of $2,740.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: August 1, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE